Next and final argument is in Appeal No. 2007-1162, Systems Division v. Teknek. Mr. Friedman? Thank you very much, Your Honor. Good morning. Good morning. Welcome. Good morning. We've read the briefs, so you don't need to summarize the background or the outlines of your argument. I just want to highlight certain things and talk about a couple of things in particular. The district court made four fundamental errors. First, it found specific personal jurisdiction over propellants who committed acts outside of the state of California where the only effect within California was injury to an appellee, a California resident. Second… Why is that an error? Pardon me? Why is that an error? Because every single reported case that we could find where there was personal jurisdiction over a party who committed acts outside of the state was in vile circumstances where the effect within the state goes over and beyond the injury to the plaintiff. It affects the citizens of that state or property of that state. There is no case reported where specific personal jurisdiction was found over an out-of-state defendant where the only impact or effect within the foreign state was injury to the plaintiff. There just isn't any case, and that's made very clear in the Schwarzenegger case and every single case where specific personal jurisdiction was found. There was an impact in the state on the citizens of the state like in the Shirley Jones case. Why isn't the impact in California that the judgment of a trial court was entirely frustrated by the conduct of stripping the assets out of the two corporate defendants in the patent infringement suit? Why isn't that an injury against the court and against the interest of all potential or actual litigants that the courts are obligated to protect? That's an injury to the plaintiff. You're not answering my question. Why isn't it an injury to everybody who has to rely on courts to protect their rights? The judgment was in favor of systems division. If there was a stripping of assets, and I suggest that it wasn't done in a fraudulent conveyance means, but if there was, that injures the plaintiff. No question it injures the plaintiff. We can agree on that. We can spend any time on that at all. The question is whether it doesn't also compromise the interest of other residents of the state of California. Because they too might win a lawsuit, maybe not a patent lawsuit, could be any kind of a lawsuit, and if the judgment of the court can be totally nullified by somebody shifting assets, then it makes a mockery out of the whole court system. In the cases that have been decided, that have found jurisdiction, there isn't the kind of speculation that you're talking about in the specific people within the state of California affected, like in the Shirley Jones case where 600,000 people received the defamatory information by the National Enquirer. In this particular case, there was no one other than the plaintiff who was affected. The second error is that the court found the jurisdiction was reasonable, even though the appellants are Scottish citizens, British citizens, even though all of the relevant witnesses to the alleged fraudulent conveyance are Scottish, British citizens. All of the records are in Scotland. All of the assets are in Scotland. And the trial court failed to follow the admonition of the Assange case, the U.S. Supreme Court case, which holds clearly that a court must be very careful in exercising jurisdiction over residents of a different country. I don't follow your point. All the court had before was a motion. There was no second cause of action that would result in discovery and trial and post-trial motions. This was just an individual motion that had additional parties defending it. So who cares for the citizenship of the people involved or the location of this or that bank account or property? Because in order to find jurisdiction, two things have to be established. The plaintiff has the burden of proof to show that there was an effect within the state of California over and above the injury to the plaintiff. And the court must determine that jurisdiction was reasonable. I understand that. You already made the first point, so we're now on the second point. And you seem to be suggesting that jurisdiction is unreasonable because of all the various connections to Scotland. And my question is, well, if we were going to have to have a trial, that would make a lot of sense. But there's no trial in the offing here. All there was was a motion at which you were involved. You made a royal argument. You filed pleadings. Declarations were filed by the two individual owners of these three companies. So where was the handicap? Where's the unreasonableness? The motion was litigated effectively despite the fact that people were from Scotland. It wasn't litigated effectively. We have a right to a jury trial. We were deprived of that right by the procedure that was used. I don't follow that at all. I don't see how you get a right to a jury trial on a motion to add a partner. It's a motion. It's not a separate cause of action. It doesn't trigger any jury trial right that I can perceive. You agree with me that in order for there to be jurisdiction, there must be a finding that jurisdiction was reasonable. That's the law. It can't be unreasonable. It cannot be unreasonable. I would say it must be reasonable. Why is it unreasonable here? What is the terrible burden because of the Scottish connection in the litigation of this motion? Because people from Scotland have to come to the United States. People who are working have to come to the United States. People who are not familiar... They didn't have to come to the United States and they didn't come to the United States. They sent in declarations and you represented them in court in front of the trial judge. So where was the terrible handicap because of the Scottish origin? I just don't see it. There is a presumption, a strong presumption based upon the Gasadi case, that there is an inherent unreasonableness in extending jurisdiction to citizens of a foreign country. That would make sense in the context of a newly filed complaint on a new cause of action. It's then going to go through the whole litigation sequence ending in trial. But I don't see how it makes sense in the context of a simple motion. I think there is a difference. I think that what should have happened here is we should have gotten notice of a claim of personal liability during the trial of the patent case so that we could have put on a defense to a jury. We didn't get that right and we had this truncated procedure which... When you say the procedure was truncated, what did you ask for that the court denied? We asked for the right to put on evidence to a jury. We said that the procedure... When you decide the jury versus the bench procedure, did you offer some witness that the judge refused to hear? Did you offer some document the judge refused to read? The judge wouldn't take live testimony. The judge was doing it on the papers. But did you ask to present live testimony? We asked in our papers before the court to have this issue tried in a regular trial before a jury so we could present live witnesses. We didn't get that. Where in the record did you ask to be able to present Ms. Hamilton or Mr. Kennett live in the motions hearing? I can't point to it right now. I think it's there. But I know we asked for a jury trial. I'm not doubting that you asked for a jury trial on a separate case involving a complaint in fraud. But that's not the question. The question is where you asked for live testimony at a hearing on the motion. I think that by the fact that we asked that the alter ego have fraudulent actions be tried to a jury implies that we want live witnesses because that's the way matters are tried to juries. All right. What's the third area? The third reason is that the court failed to apply the forum nonconvenience doctrine even though Scotland, not California, is the appropriate forum to try this dispute. And in the systems division is litigating the very same issues in Scotland. Whether the issues could be litigated in Scotland or California or both doesn't seem to be the question. The question seems to be whether the district court erred in proceeding in California. It may well be that it could also be in Scotland. Maybe even it could be better in Scotland. But that's not the question. The question is whether the district judge violated the law in proceeding in California to add the two individuals and the holding company as additional parties. I think the district court did err because, as I said before, all of the relevant witnesses are in Scotland with respect to the fraudulent conveyance claims. The assets were there. The accountants who were involved were there. And it's just a better forum. Maybe so. But that doesn't make the California district court an illegal forum. It may be a less preferred forum. Maybe not. But the fact that it isn't the better of the two forums doesn't make it illegal. I'm not suggesting that it's illegal with respect to this particular reason for error. It is an abuse of discretion statement. With respect to the two jurisdiction arguments that I mentioned, you're to decide that de novo. It's a matter of law. But I do concede that with respect to the forum nonconvenience, it's an abuse of discretion. I suggest there was an abuse of discretion because all of the relevant information and witnesses are located in Scotland, and they're litigating that. In Scotland, there was originally some sort of injunction against their removal of the property, the $3.7 million in assets from Technicolting. It's called a fundamental arrestment. It's equivalent to our injunction, right? Something like that. They couldn't take that. There was a ruling that they couldn't remove the property. And then that ruling was lifted. Yes. Is the money still there? Yeah. The money is still there. They haven't moved it off to another corporation in another country? No. The money is still there. And they got sort of an ex parte ruling inhibiting or attaching the assets. And then in a full-blown hearing, the court of Edinburgh decided that there wasn't jurisdiction. Same issue we're dealing with here. And that the appellants were deprived of fundamental justice. They don't use the words due process. They use justice. And they lifted the attachment. Mr. Freeman, in the fleeting seconds you have, do you want to reach your fourth point? Yes. The fourth point is, I mentioned it before. There was, but let me repeat it. There was a $3.7 million judgment entered against my clients without giving them due process or a chance to litigate this to a jury. During the trial, the patent infringement trial, there was no notice of that claim? Right. That's admitted. There's no dispute about it. But this all came up later and it was occasioned by the transfer of assets, apparently without consideration from the two initial corporate defendants to this extent? Let me speak to that point because I think it's important. The judgment in this case was entered on August 17, 2004. The two transfer of assets occurred before the judgment was entered. How long before? One in 2002. And let me speak to that. After the complaint was filed in this case? After the complaint in the underlying case was filed. That's the only complaint there is? Well, okay. During the time, I should add, when trials… You said one was 2002. I'm sorry. I wanted to let you tell me when the other one was. 2003. And when did the…you said the judgment was entered in 2004. If I'm remembering right, a decision came down before that. Is that right? No. The judgment went in afterwards? I think it came down in July of 2004, entered in August 2004. So they broke the assets in 2003 after a complaint had been filed. 2002 was primary moving. And what I want to mention is that… When was the complaint filed? 2001, I believe. The complaint was filed in 2001. Litigation is underway. In 2002, they move assets. In 2003, they move assets. And then in July of 2004, a $3.7 million judgment is assessed against them, which corresponds to virtually the exact amount they moved over. No, no, no, no, no. The judgment was far inaccessible. It was moved over. But here's the point. In 2002, when the transfer was made, the trial court had granted summary judgment in favor of our clients. So there was no complaint pending at that time. Now, Your Honors or the Federal Circuit reversed that ruling of summary judgment. I think the decision came down in early 2004. But the time the transfer were made, they were made at a time when there was no complaint on trial. My clients were… Summary judgment had been granted in their favor. All right. Now, we've given you a lot of extra time. Let's hear from your opponent, Mr. O'Connor. Thank you. Thank you, Your Honor. In your brief, you concede up front that the review by this panel of the findings and conclusions of the district judge are all subject to de novo review. I would have thought that intent-based findings would be reviewable to clear error. I agree. And I caught myself on that just before I walked in. I was going to bring that to your attention. I disagree with myself. Maybe that the ultimate issue of jurisdiction and constitutional reasonableness and things like that are reviewable to de novo. But it looks to me, as I read Judge Carter's rather detailed decision, that he makes one specific finding after another after another, many of which have to do with intent to, in effect, to fraud the court by hiding the money that should pay the judgment. And it seems to me that we might have to review those findings deferentially rather than de novo. I agree.  Now, what evidence did you put on to support your motion? You presumably have the burden of persuasion and the burden of proof to establish the right to the relief that your motion sought. Before I get into that detail, I want to talk about these dates because the dates that you're asking about were not correct. The answers you gave were not correct. They were laid out in Judge Carter's order. And as you probably know, I'm well familiar with this case because I started in 2009. This is our third appeal on this case. The case was filed in 2000 according to Judge Carter's order, which is correct, because I know because I gave him the record. In April, two months after SDI filed this lawsuit, in April of 2000 is when they formed Tenant Holdings. Then we had the appeal, and forgive me if it's the date, but it's been a long time, but we filed the case in 2000. There was a summary judgment order against us, I think it was about a year or so later, and I think it was in 2003. It may have been early 2004 that we had that reversed. In 2003 was the first transfer of assets to Tenant Holdings, and that was 3.5 million pounds. And then in 2004, just before the judgment was, let's see, just before the judgment was entered, there was the other transfer of 1.5 million pounds. So these weren't transfers that took place long before. One was after, I believe it was right after we won the appeal, and the other one was just before the jury verdict. And the suspicion, obviously, was why they formed Tenant Holdings in the first place right after we filed the lawsuit and then left it open and did nothing with it. With regard to your question about the evidence we presented, the sense of the evidence we presented was, and it's in our motion, which is not in the appendix, but is in the… I'm asking about evidence, not plea. Let's just say the evidence. I just said the evidence is in our motion. And what we did in our motion was we outlined all the deposition testimony verbatim of Sheila Hamilton where she testified, and I know because I took her deposition and went through all of the… In the first place, we were shocked that there were no assets in the defendants in her deposition, and in her deposition I pursued that and said, where did all these assets go? And that's when I said, well, they were transferred over here to Tenant Holdings. Well, in response to what? Well, it was a dividend declared to Tenant Holdings. The short answer is all of your evidence were admissions made on deposition by the two loaners. Correct. Correct. That's the short answer. That's exactly right. How did you get around the personal jurisdiction problem? Are you relying exclusively on the alter ego, suggesting that because the court made findings of an alter ego, that is dispositive of personal jurisdiction regardless of whether the two individuals have their own minimum contacts? Because they acted as an alter ego for someone who did have minimum contacts, therefore personal jurisdiction is met. Is that your argument? No, and I get it. Judge Carter did a fine job of laying all this out. He laid out the basis for jurisdiction. First of all, I can't find anything that says as a matter of law there must be an injury over and above the injury to the plaintiff. Not one of the minimum contacts. Sure. The minimum contacts, again, are outlined in detail in Judge Carter's case, specified as a fact, which entitled the deference. But what he found was that they were in this country repeatedly. They were in this country repeatedly on behalf of the two defendants pursuing the business of the two defendants, and that they were the ones who controlled the litigation. They were present in the litigation. They testified in the litigation. One lied and one by deposition. So there's a whole series of contacts that these individuals had with this country. They didn't just rely on that alone, but that is the law needed to be laid out in California for minimum contacts, and they're there. In addition, you have the alter ego theory, which is not an alter ego in the underlying case. We didn't even know about these events until after the case was over, but the alter ego in terms of the fraudulent transfers, they directed those. They were the ones responsible for that. So it was a combination of all these different elements to keep together. I thought that you and the judge who decided in your favor weren't really relying on the fact that they were not parties, and that you didn't really try and pierce the culprit there at some point until after the judgment, because we have the Supreme Court in Nelson saying you really shouldn't be able to add people who you're going to hold liable after the case is over. I thought that what the opinion of the trial court was was that this was a case of fraudulent transfer. Correct. And not simply, or not at all, one of who really are the principles in these actions. Is that correct? That is correct. Or that wasn't your answer, and maybe it wasn't the question that you've been pursuing, but that's the impression I got from you. That's absolutely 100% correct. This had nothing to do with the alter ego. It was an underlying case, which is what we're talking about. We have a case about this. It had nothing to do with the underlying case. This had to do solely with fraudulent transfer of assets. Mr. O'Connor, what's the proof of control of the litigation on the infringements? Well, again, Judge Carter decided the relevant law, which is that you basically have to get behind your job. Essentially, you're presumed to be in charge of the litigation. If you had a controlling interest, control of the corporation, then the burden basically shifts to the other side to show, no, you really had nothing to do with controlling the litigation. If you'll bear with me for one second, just underline this. It says here, as two California courts have reasoned, the non-parties failed to show that some other entity or individual controlled the litigation. In other words, their burden. Coupled with the non-party's control of the defendant is sufficient to satisfy the requirement that the non-party controlling the underlying litigation against the question of California law. But if they control the company, then it's their burden to show that, no, somebody else really controlled this litigation and we had nothing to do with it. But then he went further to show that they were actually in court. They testified. They were present at all times. They clearly had the opportunity to make sure that the underlying case was properly defended, which is really what this gets down to. It's just an equitable issue, whether somebody who really is kind of a remote owner can suddenly be pulled in when you really didn't know what was going on in the underlying litigation. This is one where they were intimately involved, even as I said earlier. But it's not really the law. If a corporate officer or a principal or another masterminds the litigation, would they become personally liable? If there are other factors. That's just one factor. Your case seems to be they stripped out the assets of the two defendants in secret and they controlled the defense and were the real actors in this post-filing phase. Correct. Anything further? I'm going to get my hand ready. No, it's all I have. All right, Mr. Friedman, we'll give you a little bit of a vote after you've used up all your time and then some.  Thank you very much. When you ask the counsel for his basis of jurisdiction, he said that the defendants were here doing business for themselves and on behalf of technic holdings. If you look at page 12 and 13 of the opening brief, you'll see that that's not true. The only evidence was that they came a couple of times for trade shows. They were not here in any individual capacity, but as a corporate officer having nothing to do with this case, they never conducted business in California. They did not attend shows for original defendant LLC or original defendant Technic Electronics. They weren't involved in sales for any technical entity. There is just no connection in California with these people. None. I think that's my point. All right. We thank you both. This honorable court is adjourned from day to day. Thank you.